■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH THOMPSON, JR., Respondent, v HAROLD J. SMITH, as Superintendent of Attica Correctional Facility, Appellant. — Judgment unanimously reversed, on the law and facts, and petition dismissed. Memorandum: After a parole revocation hearing, relator was found to have violated four separate conditions of his parole release, his parole was revoked and he was ordered to be held for two years before further consideration for parole release. Upon a subsequent application for a writ of habeas corpus, Special Term found that respondents had failed to establish by competent evidence that relator had violated two of the conditions of his parole, to wit, that he failed to lead a law-abiding life in that on two separate occasions he attempted to cash stolen checks. The court dismissed those violations and ordered that relator be reconsidered for parole in one year. We reverse. ¶ Subdivision 5 of section 259-i of the Executive Law provides that "[a]ny action by the board pursuant to this article shall be deemed a judicial

function and shall not be reviewable if done in accordance with law." The scope of review by the court is accordingly limited. When the basis for parole violation is an alleged criminal act, it is not essential that the Parole Board establish the measure of culpability required for a criminal conviction. "A parole revocation hearing is not a criminal trial but rather is in the nature of an administrative hearing to determine whether a parolee has violated the conditions of his parole (*People ex rel. Maggio v Casscles*, 28 NY2d 415, 418)" (*People ex rel. Walker v Hammock*, 78 AD2d 369, 371-372). The charges at such hearing need be proven by a preponderance of the evidence and not beyond a reasonable doubt (*People ex rel. Matthews v New York State Div. of Parole*, 58 NY2d 196, 202). ¶ The evidence here clearly meets the required standard to establish that relator attempted to cash stolen checks. The evidence established that: on March 3, 1982, a burglary was discovered at the home of Harry Kennedy; a number of checks were missing; on the day the burglary was discovered, relator went to two branches of Marine Midland Bank attempting to cash two separate checks drawn on the account of Harry Kennedy, payable to Willie Riley; and Harry Kennedy was out of town on March 3, 1982 (the date written on the checks). The teller at the second bank recognized relator as a former classmate and picked his photo out of a mug shot album. He was later identified by both bank tellers. Although Harry Kennedy did not appear to testify, his son-in-law testified that Mr. Kennedy was 80 years old and suffering from poor health, including diabetes and a stroke which left him partially paralyzed. The son-in-law testified that he consulted Mr. Kennedy and the latter indicated that he had not written any checks to a person named Willie Riley. Additionally, there was testimony from one of the bank tellers that she was the person who opened Mr. Kennedy's account; that she is familiar with his signature; and that the signature on a photocopy of one of the checks was not Mr. Kennedy's. These facts establish that relator attempted to cash two stolen checks and permit the inference that he was not doing so lawfully. (Appeal from judgment of Supreme Court, Wyoming County, Conable, J. — habeas corpus.) Present — Dillon, P. J., Hancock, Jr., Callahan, Doerr and Moule, JJ.